# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CATHERINE BONILLAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CV-1053-XR |
| | § | |
| HARLANDALE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered Defendant's Motion to Dismiss (Docket Entry No. 5), Plaintiff's Amended Response (Docket Entry No. 7), and Defendant's Reply (Docket Entry No. 8). For the following reasons, Defendant's motion to dismiss is DENIED.

## FACTUAL BACKGROUND[1]

Plaintiff Catherine Bonillas was employed as a teacher at Gilbert Elementary School by Defendant Harlandale Independent School District ("HISD") on a one year contract. Sometime in February 2010, HISD implemented an Intervention Plan ("Plan") to remove at-risk students from Physical Education classes and restrict their recess time so that they could be tutored for the TAKS standardized test. School administrators requested that teachers sign a waiver form, distributed on February 1, 2010, waiving their conference or planning period in order to dedicate that time to TAKS

---

[1]The facts contained in this summary are those alleged by Plaintiff's complaint. No evidence beyond the pleadings is before this Court. Pl.'s First. Am. Pet., Dec. 22, 2010, Am. Ex. 1 of Appendix to Notice of Removal (Docket Entry No. 4).

1

tutoring.  Bonillas declined to participate in the Plan and did not sign the waiver.

On February 24, 2010, Bonillas received her performance evaluation for the year.  On March 21, 2010, Bonillas filed a complaint pursuant to HISD's Board Policy DGBA (local).  She alleged that her supervisor, Principal Rosemary Cooremans, had implemented a policy depriving students of the 135 minutes of physical activity for each student required by Tex. Educ. Code § 28.002.  The complaint was sent to HISD Superintendent Robert Jaklich.

Bonillas voiced her concerns about the Plan in a public interview with WOAI News 4 on March 25, 2010, and a follow-up story on March 29, 2010.  On March 26, 2010, the Superintendent's office denied violations of law alleged in Bonillas' complaint.  On that same day, Bonillas received a reprimand for a prior incident.

On March 29, 2010, Bonillas appealed the Superintendent's decision to deny her complaint to the Board, and forwarded her complaint to HISD's counsel.  Also on March 29, 2010, the HISD Board voted to terminate her contract.

On April 30, 2010, Bonillas received the results of a second evaluation that was conducted pursuant to her request for reappraisal of her performance.  The evaluation of her performance was poor.  She challenged her poor performance appraisal through the grievance process, and HISD admitted on May 26, 2010 that procedural errors were made during her second evaluation.  HISD offered to appraise her again.

On May 3, 2010, Bonillas field a Whistleblower Complaint with the HISD Superintendent. He rejected the complaint and her retaliation claims on June 4, 2010.  Bonillas appealed that decision to the HISD Board of Trustees and requested an open session.  The Board heard her Whistleblower Complaint in a closed session on June 24, 2010.  The Board then reconvened in open session and

voted unanimously to reject her complaint.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in the 225th Judicial District Court of Bexar County, Texas on August 18, 2010.[2] Her original petition asserted a whistleblower retaliation claim pursuant to Texas Government Code § 554.002, and sought reinstatement, actual damages, pre- and post-judgment interest, and attorney's fees. On September 10, 2010, Defendant filed a Plea to the Jurisdiction and Original Answer in the state court.[3] Plaintiff filed an amended petition on December 22, 2010, adding a claim that the retaliation violated her rights under the First Amendment and the Fourteenth Amendment of the U.S. Constitution, and that she was denied the protections of the Due Process Clause of the Fourteenth Amendment when her contract was terminated.[4] Defendant then timely removed the case to this Court on December 29, 2010 pursuant to 28 U.S.C. § 1446(b).[5] Defendant filed this motion to dismiss on January 4, 2011.[6] Plaintiff filed a response on January 17, 2011,[7] and Defendant filed a reply on January 19, 2011.[8]

## LEGAL STANDARD

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to

---

[2]Pl.'s Orig. Pet., Aug. 18, 2010, Am. Ex. 1 of Appendix to Notice of Removal (Docket Entry No. 4).

[3]Def.'s Orig. Ans., Sep. 10, 2010, Am. Ex. 1 of Appendix to Notice of Removal.

[4]Pl.'s First. Am. Pet., Dec. 22, 2010, Am. Ex. 1 of Appendix to Notice of Removal.

[5]Notice of Removal, Dec. 29, 2010 (Docket Entry No. 1).

[6]Mot. To Dismiss, Jan. 4, 2011 (Docket Entry No. 5).

[7]Am. Resp. To Mot. To Dismiss, Jan. 17, 2011 (Docket Entry No. 7).

[8]Reply to Resp. To Mot. To Dismiss, Jan. 19, 2011 (Docket Entry No. 8).

dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id.* A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* 556.

## ANALYSIS

### I. Whistleblower Claim

The Texas Whistleblower Act prohibits a government employer from taking an adverse employment action against an employee who reports the employer's violation of law, in good faith, to an appropriate law enforcement agency. TEX. GOV'T CODE § 554.002. Bonillas alleges that she received a written reprimand and poor performance evaluation, and that her contract was ultimately terminated, due to her filing a complaint and publicly commenting upon the Intervention Plan instituted at Gilbert Elementary.[9] Defendant argues that the whistleblower claim should be dismissed because (1) this Court lacks jurisdiction over the claim because it is subject to the state's Eleventh Amendment sovereign immunity, and (2) Plaintiff fails to state a prima facie case of whistleblower

---

[9]Pl.'s First Am. Pet. ¶¶ 27-33.

retaliation.

## A. Sovereign Immunity

HISD argues that this Court does not have jurisdiction to hear Plaintiff's whistleblower claim, because the Texas Legislature has not waived the state's sovereign immunity in any court other than state court for such claims.[10] Plaintiff argues that jurisdiction is appropriate because the terms of the statute waive sovereign immunity without qualification to state or federal courts, and that even if the state had waived the immunity only in state court, Defendant's removal of the case to federal court itself constitutes the requisite waiver of immunity.[11]

Both parties' arguments conflate the two distinct types of immunity at issue: (1) the common law doctrine of governmental immunity, which prohibits suits against Texas governmental entities exercising government functions,[12] and (2) the sovereign immunity created by the Eleventh Amendment of the U.S. Constitution, which provides that states are immune from suits in federal courts brought by a citizen of any state.[13]

State governmental immunity prohibits suits against the state or its governmental entities, unless the state consents to be sued. *Fowler v. Tyler Independent Sch. Dist.*, 232 S.W.3d 335, 337-38 (Tex.App.–Tyler 2007). A school district, as a governmental unit, is protected by governmental immunity. *Id.* (citing *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.

---

[10]Def.'s Mot. To Dismiss at 3-4.

[11]Pl.'s Resp. at 4-5.

[12]*See e.g., Tomball Hosp. Authority v. Harris County Hosp. Dist.*, 178 S.W.3d 244, 249-50 (Tex.App.–Houston [14th Dist.] 2005), *reh'g overruled and pet. for review filed* (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003)).

[13]*See e.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).

1992). Governmental immunity is distinct from sovereign immunity. *Witchita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). While sovereign immunity protects the state and its divisions from suit and liability, *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976), governmental immunity extends to political subdivisions such as counties, cities, and school districts. *Taylor*, 106 S.W.3d at 694 n.3 (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995); *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex. 1993)).

The Eleventh Amendment bars an action in federal court by a citizen of a state against a state or its departments or agencies. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). Eleventh Amendment immunity may only be waived by "the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-06 (1990) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Atascadero State Hospital*, 473 U.S. 234, 238 (1985). General consent to suit provisions are insufficient to waive Eleventh Amendment immunity, rather, the state must unequivocally express its consent to be sued in *federal* court. *See Trans-Hudson*, 495 U.S. at 306-07 (citing *Atascadero State Hospital*, 473 U.S. at 241; *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 534 (1944)).

The Texas Whistleblower Act provides that

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE § 554.0035. A public employee of a local government entity may bring a

6

whistleblower suit in a district court "of the county in which the cause of action arises" or "of any county in the same geographic area that has established...a council of governments or other regional commission" with the county in which the cause of action arises. *Id.* § 554.007(b).

By its terms, the Texas Whistleblower Act only waives state sovereign immunity in state court, not Eleventh Amendment immunity in federal court. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 333 (5th Cir. 2002); *Martinez v. Texas Dep't. Of Criminal Justice,* 300 F.3d 567, 575-76 (5th Cir. 2002). Neither the waiver or venue provisions of the act contain an unequivocal expression or an overwhelming implication that Texas intended to waive its Eleventh Amendment immunity in the federal courts with regard to state whistleblower claims. *Martinez*, 300 F.3d at 575.

Defendant asserts that, because the statute does not waive Eleventh Amendment immunity, this Court has no jurisdiction to hear the whistleblower claim.[14] This arguments rests on a false premise, however, that HISD is subject to Eleventh Amendment immunity. Eleventh Amendment immunity extends only to states, and in some cases to state agencies where a judgment would have the same practical effect as a judgment against the state itself, such that the immunity is necessary to protect the state treasury. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400-01 (1979). The protections of the Eleventh Amendment do not, however, extend to all political subdivisions, such as counties or municipalities, that exercise a "slice of state power." *Id.* (citing *Mt. Healthy Board of Ed. v. Doyle,* 429 U.S. 274 (1977); *Moor v. Alameda County*, 411 U.S. 693, 714-15 (1973)). Although school districts are protected by common law governmental

_____

[14]Def.'s Mot. to Dismiss at 4.

7

immunity,[15] that does not necessarily mean that they are sufficiently state-like to be subject to Eleventh Amendment immunity from suit in federal court.

Whether a particular government entity is protected by Eleventh Amendment immunity is a question of federal law, but is largely informed by the nature of the entity created by state law. *Mt. Healthy*, 429 U.S. at 280. Independent school districts in Texas enjoy a great deal of legal and political autonomy. *San Antonio Independent School Dist. v. McKinney*, 936 S.W.2d 279, 282 (1996) (citing TEX. EDUC. CODE §§ 7.003, 11.051-.063, 11.151, 11.152, 45.001-.232). Furthermore, the funding scheme for independent school districts assures that no judgment against a district would have to be paid from the state's treasury. *McKinney*, 936 S.W.2d at 284 (citing TEX. EDUC. CODE ANN. §§ 41.001-45.232). Accordingly, Texas independent school districts, including Defendant HISD, are not protected by the sovereign immunity of the Eleventh Amendment. *McKinney*, 936 S.W.2d at 284.

Even though Defendant cannot invoke the Eleventh Amendment, this Court still must determine whether it has jurisdiction to consider the whistleblower claim in light of precedent that the statutory waiver applies only to actions brought in state court.

The Fifth Circuit has held that there is a distinction between immunity from suit in federal court, which a state may waive by removal to federal court, and immunity from liability. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 253 (5th Cir. 2005). "[T]he Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other." *Id.* Thus, the Southern District of

---

[15]*See Dillard v. Austin Independent School Dist.*, 806 S.W.2d 589, 594 (citing *Braun v. Trustees v. Victoria Indep. School Dist.*, 114 S.W.2d 947, 949-50 (Tex.App.–Aus. 1991, *writ ref'd*).

8

Texas has held that a state or state agency's removal of an action to federal court does not automatically waive all aspects of sovereign immunity, such as the Texas state law requirement that there must be "legislative consent to sue the State on a breach of contract claim." *Nagm v. University of Tex. Health Science Center at Houston*, 2005 WL 1185801, Case No. Civ.A. H-04-2132 (S.D. Tex. 2005 May 11, 2005) (citing *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 408 (Tex. 1997)).

Here, the relevant statute contains two separate waiver provisions. The first is an unqualified wavier of immunity from liability: "Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." Tex. Gov't Code § 554.0035. Standing alone, this provision is an unequivocal waiver of governmental immunity from liability for whistleblower claims. The provision does not limit the waiver to any particular state courts.

The second waiver provision provides that a whistleblower suit may be brought in either a district court "of the county in which the cause of action arises" or "of any county in the same geographic area that has established...a council of governments or other regional commission" with the county in which the cause of action arises, thus implicitly waiving immunity from suit in those specified state courts. *Id.* § 554.007(b). Plaintiff initially brought her claims in the appropriate state court, and it is only Defendant's removal of the case to federal court which has created the immunity issue. Generally, a state's removal of a case from state court to federal court waives its Eleventh Amendment immunity from suit. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 624 (2002). By removing the case, a state defendant voluntarily invokes the jurisdiction of the federal court, even on state court issues. *Id.* at 621-624. Although the Eleventh Amendment

is not at issue in this case, similar reasoning applies.  "[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal form."  *Id.* at 624.

The Court therefore concludes that Defendant has waived its governmental immunity from suit by removing this case to federal court.  Furthermore, Defendant is not protected by Eleventh Amendment immunity from suit in federal court.  Viewing the statutory waiver of immunity from liability as separate and unequivocal, no doctrines of sovereign or governmental immunity deprive this Court from jurisdiction over Plaintiff's whistleblower claim.

## B. Prima Facie Case

In order to state a prima facie case for a whistleblower claim, Plaintiff must allege that (1) she is a public employee; (2) she acted in good faith; (3) her report involved a violation of law; (4) the violation of law was made by her employing governmental agency or by another public employee; (5) she made her report to the appropriate law enforcement authority; and (6) she suffered retaliation as a result of making her report.  *Housing Authority of City of El Paso v. Rangel*, 131 S.W.3d 542, 546 (2004).

Defendant argues that Plaintiff has "failed to explain the alleged violation of law, failed to identify the appropriate law enforcement authority to whom Plaintiff allegedly reported a violation of law, and failed to identify the adverse employment action that Plaintiff claims occurred."[16]

### *Violation of Law*

Plaintiff alleged that school administrators implemented an Intervention Plan to pull "at risk"

_____

[16]Def.'s Mot. at 5-6.

students from PE and restrict their recess in order to tutor them for the TAKS test.[15] She alleged that

the Plan also asked teachers to waive their planning period.[16] She asserted that the Plan violates TEX.

EDUC. CODE § 28.002, specifically the requirement that each student participate in at least 135

minutes of moderate to vigorous physical activity per week, alleging that "[a] good number of

students were receiving less than 135 minutes of moderate to vigorous physical activity – i.e., 10

minutes of recess once a week and 60 minutes or less of PE, twice weekly."[17] TEX. EDUC. CODE §

28.002(l). Although Defendant argues that the complaint does not "specific facts" or "facts that

support her conclusions,"Plaintiff has alleged more than just "labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Taking all of Plaintiff's

allegations as true and construing the facts in favor of the Plaintiff, Plaintiff has alleged that the Plan

implemented by the school was a violation of law.

### *Law Enforcement Authority*

Plaintiff alleges that, pursuant to Harlandale ISD Policy, she reported the alleged violation to

Superintendent Robert Jaklich, and later to the Harlandale ISD Board.[18] The Whistleblower Act states

that "a report is made to an appropriate law enforcement authority if the authority is a part of a state

or local governmental entity or of the federal government that the employee in good faith believes is

authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2)

investigate or prosecute a violation of law." TEX. GOV'T CODE § 554.002(b). Plaintiff alleges that

---

[15]Pl.'s First Am. Pet. ¶ 9.

[16]*Id.* ¶ 10.

[17]*Id.* ¶ 28.

[18]*Id.* ¶¶ 14, 17, 30.

both Jaklich and the Board had "authority to regulate under or enforce the law."[19]

The particular law that an employee alleges to be violated is determinative of whether the "appropriate law enforcement authority" has the authority to "regulate under or enforce the law alleged to be violated..." *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002). In *Needham,* the Texas Supreme Court held that the Texas Department of Transportation ("TxDOT") was not the appropriate law enforcement authority for a public employee to report a fellow employee's violation of the law prohibiting driving while intoxicated. *See id.* The appropriate authority must have the power to either regulate under or enforce the laws at issue, or to investigate or prosecute such laws. *Id.*

The Court noted that the Whistleblower Act may still apply, however, if the employee believed in good faith that TxDOT was the appropriate law enforcement authority as defined by the statute. *Id.* An employee acts in good faith if (1) she subjectively believed that the governmental entity was authorized to regulate under or enforce the law, or (2) her belief was objectively reasonable in light of her training and experience. *Id.* at 320-21. Plaintiff has alleged that she filed a complaint against her direct supervisor with her Superintendent, "pursuant to Harlandale ISD's Board Policy DGBA (local)."[20] After the Superintendent denied the alleged violations, she appealed the decision to the Board.[21] She alleges that, in good faith and based on her experience and training as a teacher, she reasonably believed that the action of the school and the Principal violated the law, and "that the

---

[19] *Id.* ¶ 30.

[20] *Id.* ¶ 14.

[21] *Id.* ¶ 17.

school was committing violations of law;"[22] and that the Superintendent and the Board had the authority to regulate under or enforce the law.[23]  Construing the facts in favor of the Plaintiff, the Court concludes that Bonillas had a good faith belief that she reported the alleged violations of law by her Principal[21] to the appropriate law enforcement authority.[22]

### Adverse Employment Action

The Texas Education Code provides that a school board "may terminate the employment of a teacher employed under a probationary contract at the end of the contract period if in the board's judgment the best interests of the district will be served by terminating the employment." TEX. EDUC. CODE. § 21.103(a).  The board is required to perform a written evaluation of a teacher at least annually, and to consider the most recent evaluation before making the decision not to renew a teacher's contract if evaluations are relevant to that decision.  *Id.* § 21.203(a).  The board's decision to terminate or nonrenew a probationary contract "is final and may not be appealed."

The Whistleblower Act defines "personnel action" as any "action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." TEX. GOV'T CODE § 554.001(3).  Defendant argues that Plaintiff cannot show that she

---

[22]*Id.* ¶ 29.

[23]*Id.* ¶ 30.

[21]Defendant argues that reporting a violation of Board policy to the Board is not conduct protected by the Whistleblower Act.  The Court notes that Plaintiff has alleged violations of the Texas Education Code, not just Board policy, and that she alleges the violations were committed by her supervisor Principal Cooremans, not the Board itself.

[22]Plaintiff also alleges that she reported the alleged violation to the media in an interview with WOAI News 4.  However, reports to the press do not implicate the Whistleblower Act.  *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 146 (Tex. 1995).

suffered harm as a result of her report, because the Texas Education Code permits school boards to terminate or nonrenew probationary teacher contracts at the end of their terms, without good cause or specific reasons.[23] Furthermore, because the statute provides an extensive appeal process for nonrenewal of term contracts, but no opportunity to appeal termination of a probationary contract, Defendant argues that the Texas legislature specifically declined to create a private right of action for termination or nonrenewal of a probationary contract.[24] However, Bonillas alleges that her report resulted in "a written reprimand, poor performance evaluation, and her eventual termination."[25] Even though her probationary contract was not guaranteed and may have been nonrenewed on other reasons, her written reprimand and poor performance evaluation are independent personnel actions for which she claims damages. The fact that she may not be entitled to reinstatement or to the damages sought for loss of employment, does not mean that she has not stated an otherwise valid claim, and does not mean that she is not entitled to the other damages sought in her complaint.[26] Furthermore, Defendant's argument is circular - the question before the Court is precisely whether the Whistleblower Act does create a private right of action to sue when a probationary contracted is nonrenewed as a result of certain actions. The fact that the Texas Education Code does not provide a legal mechanism for challenging nonrenewal does not mean that a nonrenewal decision does not violate separate provisions of law.

Plaintiff's Whistleblower Act claim is not barred by doctrines of sovereign or governmental

---

[23]Def.'s Mot. at 6.

[24]*Id.* at 7.

[25]Pl.'s First Am. Pet. ¶ 31.

[26]*See id.* ¶ 41.

immunity, and Plaintiff has pled a prima facie case. Accordingly, Defendant's motion to dismiss Plaintiff's Whistleblower Act claim is DENIED.

## II. First Amendment Claim

Bonillas alleges a claim pursuant to 42 U.S.C. § 1983 for violation of her First and Fourteenth Amendment rights. She alleges that Defendant retaliated against her for exercising her First Amendment rights by making speech as a citizen on matters of public concern, the "efficient provision of public services."[27]

To succeed on a First Amendment retaliation claim, a Plaintiff must prove that (1) she suffered an adverse employment decision; (2) she was engaged in a protected activity; and (3) the adverse decision was caused by the protected activity. *Jordan v. Ector County*, 516 F.3d 290, 295 (5th Cir. 2008). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Furthermore, speech made "solely in furtherance of a personal employer-employee dispute" is not protected First Amendment activity. *Salge v. Edna Independent School Dist.*, 411 F.3d 178, 187-88 (5th Cir. 2005).

Defendant objects that Plaintiff has not alleged sufficient facts to establish that she suffered an adverse employment decision, because she had no right to renewal of her probationary contract. Defendant also seeks to characterize Plaintiff's speech as only an employee grievance, and argues that the context and timing of her complaints indicates that she was merely preemptively seeking to avoid

---

[27]Pl.'s First Am. Pet. ¶¶ 34-36.

termination rather than speak on a matter of public interest.[28]  As noted above, Plaintiff has alleged

that she was subject to several adverse employment actions: a written reprimand, a poor performance

evaluation, and nonrenewal of her contract.[29]  Plaintiff clearly alleges that she made a statement to

the media on this issue;[30] her complaint was not made only internally or through the employee

grievance process.  Defendant also argues that Plaintiff has not alleged any connection between her

public complaints and the termination of her job, asserting that it was the Board who terminated her

contract while her grievance was submitted only to the Superintendent.[31]  This argument ignores

Plaintiff's allegations that she reported the activity to the Board as well as the Superintendent,[32] and

that she reported the activity to the media.[33]  Furthermore, Defendant's arguments regarding the

context and timing essentially seek this Court to resolve a fact issue which is inappropriate at the

motion to dismiss stage.  Although the Court may take judicial notice of the school district's

grievance policy ("DGBA"),[34] the Court need not resolve the difference in interpretations between

the parties as to the alleged facts.  Construing all factual allegations in favor of the Plaintiff, she has

stated a First Amendment claim sufficient to survive the motion to dismiss.

---

[28]Def.'s Mot. at 9-10.

[29]Pl.'s First Am. Pet. ¶ 31.

[30]*Id*. ¶ 15.

[31]Def.'s Mot. at 12.

[32]Pl.'s First Am. Pet. ¶¶ 17, 30.

[33]*Id.* ¶ 15.

[34]*See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

## III. Fourteenth Amendment Due Process Claims

Plaintiff asserts a Fourteenth Amendment claim based on the allegations that Defendant made public false charges in connection with the termination of her contract, that she "was not provided notice or an opportunity to be heard prior to the discharge" despite requesting an open hearing, and that her "request for a hearing to clear her name was denied."[35]

When a government entity discharges its employee "in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities," the employee may have a claim for violation of the right to procedural due process.[36] *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1982) and citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)). The Fifth Circuit has held that a seven-element "stigma-plus-infringement" test determines whether an employee has sufficiently proven a deprivation of liberty without notice justifying a 42 U.S.C. § 1983 remedy. *Bledsoe*, 449 F.3d at 653 (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)). A plaintiff must show that (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or opportunity to be heard prior to the discharge; (5) the charges were made public; (6) she requested to clear her name; and (7) the employer denied her request. *Id.*

Defendant argues that Plaintiff's allegations do not rise to the level of stigma plus because she has not alleged the specific comments made by Defendant, and she has alleged only that school

---

[35]Pl.'s First Am. Pet. ¶¶ 38-40.

[36]Defendant's motion to dismiss does not distinguish between substantive due process or procedural due process arguments.

officials commented on her poor performance evaluation.[37]  Defendant argues that the alleged

statements cannot have provided the requisite "badge of infamy" required for a stigma plus claim.[38]

Defendant also argues that, because Plaintiff herself called the press conference in which the

statements were made, that they were not "published" by the government.[39]  Finally, Defendant also

argues that Plaintiff could not have been deprived of a property right, because she had no property

right to renewal of her probationary contract.[40]

Defendant's arguments are not persuasive.  Plaintiff's press conference was not an invitation

or open forum to make stigmatizing comments about the Plaintiff.  Furthermore, as discussed above,

Plaintiff has alleged other damages beyond the nonrenewal of her contract.  The "liberty" protected

by the Fourteenth Amendment is broad.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564,

572 (1972).  It may include "the right of the individual to contract, to engage in any of the common

occupations of life, to acquire useful knowledge..." *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390,

399 (1923)).  An individual's mere interest in his or her own reputation, apart from some more

tangible interest, is not protected.  *Thomas v. Kippermann,* 846 F.2d 1009, 1010 (5th Cir. 1988); *see*

*also Paul v. Davis*, 424 U.S. 693, 712 (1976).  With regard to any potential "badge of infamy"

resulting from the alleged statements, Defendant's Reply admits that it is equally plausible that the

comments foreclosed employment opportunities as it is plausible that Plaintiff was not harmed by the

---

[37]Def.'s Mot. at 13-14.

[38]*Id.*; Def.'s Reply at 5-6.

[39]Def.'s Mot. at 13.

[40]*Id.* at 15-16.

comments.[41]  The fact that the claim is plausible allows it to survive at the motion to dismiss stage. Plaintiff is not required to provide evidence or proof at this time.  Again, Defendant may raise a motion for summary judgment at the appropriate time.

Finally, Defendant argues that Plaintiff's allegation that she was denied her request for an open hearing does not fulfill the requirement that she allege that she was not provided an opportunity to be heard, because she was provided a closed hearing before the board.[42]  Plaintiff's Complaint states that the Board heard her Whistleblower Complaint in a closed session.[43]  The Texas Open Meetings Act provides that if the subject of a deliberating or hearing requests an open meeting, the general rule that a government body is permitted to conduct a closed meeting on issues of employment, reassignment, or dismissal of an employee does not apply.  TEX. GOV'T CODE ANN. § 551.074.  "[A]n employee need not use the term 'name-clearing hearing' to satisfy the sixth element of the stigma-plus-infringement test" but simply must "petition the employer in a manner that can be construed as asking for an opportunity to clear his name."  *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (citing *Rosenstein v. City of Dallas*, 876 F.2d 392, 396 (5th Cir.1989)).  Plaintiff's complaint alleges that she requested that her Whistleblower Complaint be heard in open session.[44] In light of the Texas Open Meetings Act's providing the opportunity to request an open hearing,

---

[41]Def.'s Reply at 7.

[42]Def.'s Mot. at 16-17.

[43]Pl.'s First Am. Pet. ¶ 25.

[44]*Id.*

Plaintiff has alleged that she petitioned the Board for an opportunity to clear her name.[45]

Accordingly, Defendant's motion to dismiss the Fourteenth Amendment due process clam is denied.

## IV.  42 U.S.C. § 1983 Claim

Defendant argues that Plaintiff may not use the statutory mechanism of 42 U.S.C. § 1983 because she has not alleged that any conduct against her was a result of an official policy or widespread and customary practice of HISD.[46]

A municipality may be liable under 42 U.S.C. § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  In addition to officially adopted policy statements, regulations, ordinances, or decisions, an "official policy" may be established by proof of a "persistent, widespread practice ... which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (citing 42 U.S.C. § 1983)).

Plaintiff has alleged that her complaints were repeatedly ignored or denied by both the Superintendent and the HISD Board.  She has also alleged that the Board denied her the opportunity of a hearing to clear her name.  Construing the facts in her favor, she has alleged sufficient facts that

---

[45]Defendant relies on the Fifth Circuit's decision in *Fairchild v. Liberty Independent School District* for its argument that Plaintiff was not entitled to a public hearing and thus that her request for one did not satisfy the stigma plus test.  Def.'s Reply at 8-9.  Defendant misconstrues the case.  *Fairchild* dealt only with whether hearing a teacher's grievance in closed session was a violation of her First Amendment rights.

[46]Def.'s Mot. at 18-21.

she may be able to prove that a policy or custom of the Board resulted in the actions taken against her. At the motion to dismiss stage, the Plaintiff is not required to provide all facts which she believes establish such a custom or practice. Furthermore, Defendant's argument that "the HISD Board had no notice or knowledge of any retaliation" ignores the allegations that the Board itself denied Plaintiff's complaint and opportunity to be heard.

Accordingly, Defendant's motion to dismiss the claims brought under 42 U.S.C. § 1983 is denied.

## CONCLUSION

Defendant has waived its governmental immunity from suit by removing this case to federal court, and is not protected by Eleventh Amendment immunity from suit in federal court. Thus, no doctrines of sovereign or governmental immunity deprive this Court from jurisdiction over Plaintiff's whistleblower claim, and Plaintiff has alleged a prima facie whistleblower claim sufficient to survive the motion to dismiss. Furthermore, Plaintiff's complaint contains sufficient allegations to state claims pursuant to 42 U.S.C. § 1983 for violations of the First Amendment and the Fourteenth Amendment guarantee of procedural due process. Defendant's motion to dismiss (Docket Entry No. 5) is DENIED.

It is so ORDERED.

SIGNED this 2nd day of June, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE